# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

NORMAN MCCRARY,                                    Case No. 1:12-cv-101
     Petitioner,

                                     Barrett, J.

     vs.                                            Bowman, M.J.

WARDEN, LONDON                                     **REPORT AND**
CORRECTIONAL INSTITUTION,                          **RECOMMENDATION**
     Respondent.


Petitioner has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254. This matter is before the Court on the petition, respondent's return of writ and petitioner's

reply. (Docs. 1, 6, 8).

## I.  FACTUAL BACKGROUND

The Ohio Court of Appeals provided the following summary of the facts leading to

petitioner's convictions and sentence:

> The victim of these offenses was Ruth Stacy. Shortly before she was assaulted, Stacy's long-time partner, Mike Collins, passed away. Stacy testified that she had struggled with depression following Collins' death. In the wake of her depression, she turned to McCrary, a childhood friend of Collins. McCrary helped her around her house and with her children. Stacy slept with McCrary one night, but she regretted that decision immediately and attempted to cut off contact with him. According to Stacy, McCrary would not accept her decision. He visited her at work, called her continually, and wanted to see her constantly. Stacy testified that, on October 31, 2009, she had repeatedly rebuffed McCrary's attempts to have contact with her. That night, Stacy was attacked by McCrary while sitting on a park bench near her home. Stacy testified that McCrary had broken her phone and punched her in the face. Following that incident, Stacy signed a warrant against McCrary.
>
> According to Stacy, the following day McCrary contacted her and offered to give her money to purchase a new cellular telephone. Stacy told McCrary that if he stayed away from her, she would not pursue charges against him. That evening, McCrary and a friend showed up at her apartment, but Stacy did not let them in. Stacy noted that McCrary had been wearing a red sweat suit and a red hat at the time. According to Stacy, she had cleaned her apartment into the late evening,

and she needed to take out the garbage at approximately 3:00 a.m.  When Stacy exited from her apartment, McCrary charged at her.  He struck her in the face with a brick repeatedly.  During their struggle, he knocked her out of the apartment's hallway and into the breezeway outside.  McCrary fled from the scene when a neighbor opened a window.  Stacy testified that she identified McCrary as her attacker immediately.  From this attack, Stacy was hospitalized for four days and needed numerous surgeries.  She suffered a broken nose, a scalp laceration, and fractured wrists, and she received several hundred stitches.

Cincinnati Police Officer Alicia Bruewer testified that she had responded to emergency calls regarding the attack on Stacy.  According to Bruewer, a call to 911 indicated that a black male in a red cap had attacked Stacy.  Once she responded to the scene, Stacy confirmed to Bruewer that McCrary was her attacker.

McCrary testified in his own defense.  He stated that he had visited with Stacy several times following Collins' death, but he denied Stacy's allegations that he had slept with her and that he had attacked her on the park bench.  According to McCrary, Stacy suffered from depression and had relapsed into a former drug habit from which she was in debt.  McCrary stated that he had not been at Stacy's apartment on November 1 and that he had not attacked her.  McCrary alleged that Stacy had named him as her attacker in retaliation for his questioning Stacy's ability to parent her children to several family members.

(Doc. 6, Ex. 2, pp. 2-3).

## II.     PROCEDURAL HISTORY

### State Trial and Appellate Proceedings

On November 13, 2009, the Hamilton County, Ohio grand jury returned an indictment charging petitioner with two counts of Felonious Assault, under Ohio Rev. Code § 2903.11(A)(1) and (2).  (Doc. 6, Ex. 3).  On April 30, 2010, following a jury trial, petitioner was found guilty of both counts.  (Doc. 6, Ex 1).  On the same day, petitioner was sentenced to eight years of imprisonment.  *Id.*

On May 7, 2010, through counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, First Appellate District.  (Doc. 6, Ex. 11).  Petitioner raised the following four assignments of error challenging his convictions and sentence:

1.  THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-

2

APPELLANT BY NOT GRANTING THE RULE 29 MOTION AS THERE WAS INSUFFICIENT EVIDENCE TO CONVICT.

2. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BECAUSE THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

3. THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN COUNSEL FAILED TO OBJECT TO LAST MINUTE WITNESSES, STIPULATED TO MEDICAL REPORTS, FAILED TO CONTINUE THE CASE WHEN WITNESSES DID NOT APPEAR, AND FAILED TO GET A PRE-SENTENCE INVESTIGATION.

4. THE DEFENDANT-APPELLANT WAS GIVEN A SENTENCE THAT DOES NOT CORRELATE TO ANY OF THE SENTENCING FACTORS UNDER 2929.11 AND 2929.12.

(Doc. 6, Ex. 12). On November 12, 2010, the Ohio appellate court overruled the assignments of

error and affirmed the judgment of the trial court. (Doc. 6, Ex. 2).

**Ohio Supreme Court**

On January 3, 2011, petitioner filed a pro se motion for leave to file a delayed appeal in

the Ohio Supreme Court. (Doc. 6, Ex. 15). On February 16, 2011, the Ohio Supreme Court

granted petitioner's motion. (Doc. 6, Ex. 16). In his delayed appeal, petitioner raised the

following three propositions of law:

1. WHEN A TRIAL COURT FAILED TO PROPERLY CONSIDER THE STATUTORY FACTORS AND CONSISTENCY IN THE GUIDELINES REQUIREMENTS WHEN IMPOSING A SENTENCE THE MINIMUM SENTENCE MUST BE GIVEN AS APPELLANT IS DENIED DUE PROCESS OF THE LAW AS GUARANTEED BY BOTH THE OHIO AND UNITED STATES CONSTITUTION.

2. THE APPELLATE COURT ERRED IN AFFIRMING APPELLANT CONVICTION WHEN IT STANDS AGAINST THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF APPELLANT RIGHTS TO DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS THE UNITED STATES CONSTITUITON, AND SECTION 16 ARTICLE I OF THE OHIO CONSTITUTION.

3. APPELLATE COURT ERRED IN FINDING THAT APPELLANT DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL FOR STIPULATING TO UNRELIABLE MEDICAL RECORDS AND FOR NOT OBJECTING TO LAST MINUTE NEW WITNESSES TESTIFYING FOR THE STATE WHEN THE NOTICE WAS GIVEN AT TRIAL AND THE STATE FAILED TO TURN OVER THE CRIMINAL RECORDS IN CONTRVENTION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUITON, AS WELL AS SECTION 10 ARTICLE I, OF THE OHIO CONSTITUTION.

(Doc. 6, Ex. 17).

On May 4, 2011, the Ohio Supreme Court denied leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (Doc. 6, Ex. 19).

**Post-Conviction Petition to Vacate or Set Aside Judgment of Conviction or Sentence**

During the pendency of his direct appeal, petitioner filed a pro se petition to vacate or set aside judgment of conviction or sentence in the trial court. (Doc. 6, Ex. 20). Petitioner raised the following assignments of error in the petition:

1. WHETHER THE TRIAL COURT ERRED AND OR ABUSED ITS DISCRETION IN APPOINTING DEFENDANT A NEW ATTORNEY FOR THE PURPOSE OF APPEAL WHEN THE ATTORNEY CLIENT RELATIONSHIP BETWEEN THE ATTORNEY AND THE DEFENDANT WAS NOT TERMINATED IN VIOLATION OF MY SIXTH AMENDMENT RIGHT.

2. WHETHER THE TRIAL COURT COMMITTED A PLAIN ERROR UNDER OHIO CRIM. R. 52(B) WHEN IT TERMINATED THE ATTORNEY-CLIENT RELATIONSHIP BETWEEN ATTORNEYS PETER ROSENWALD AND THE DEFENDANT?

3. WHETHER THE INDICTMENT AGAINST THE DEFENDANT WAS FATALLY DEFECTIVE AS A RESULT THE DEFENDANT WAS DENIED DUE PROCESS OF LAW AS A STRUCTURAL ERROR OCCURRED AS WELL AS PLAIN ERROR

4. WHETHER THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING LAY WITNESS TO TESTIMONY UNDER EVID. R. 701, WHEN THE WITNESS WAS A KNOWN CRACK HEAD AND THE ONLY EVIDENCE IDENTIFYING A BRICK WAS LAY WITNESS AND THERE

WAS NO LABATORY (sic) EVIDENCE TO SUPPORT THAT A BRICK WAS THE WEAPON THAT WAS USE TO ASSAULT THE VICTYIM (sic)

5. WHETHER THE TRIAL COURT COMMITTED PREJUDICE BY NOT INSTRUCTING THE JURY THAT THEY MUST FIND THAT THE DEFENDANT KNOWLING (sic) COMMITTED THE CRIME

*Id.* On January 3, 2011, the trial court denied the petition, finding that petitioner's claims were barred by the doctrine of *res judicata* and that petitioner "failed to meet his burden to submit evidentiary documents containing sufficient operative facts to demonstrate a denial of constitutional rights." (Doc. 6, Ex. 21). The trial court also found that his petition was insufficient to warrant an evidentiary hearing. *Id.*

Petitioner filed a pro se notice of appeal of the denial of his petition to vacate on February 4, 2011. (Doc. 6, Ex. 22). The Ohio Court of Appeals issued a show cause order on February 16, 2011, giving petitioner seven days to comply with the local rule requiring that petitioner file a criminal docket statement. (Doc. 6, Ex. 23). Petitioner's appeal was ultimately dismissed for failure to comply with the local rules. (Doc. 6, Ex. 24). Petitioner did not appeal the dismissal to the Ohio Supreme Court.

### Application to Reopen

Pursuant to Ohio App. R. 26(B), petitioner filed a pro se application to reopen his direct appeal on February 8, 2011. (Doc. 6, Ex. 25). Therein, petitioner argued that his appellate counsel was ineffective for failing to raise the following assignments of error:

1. WHETHER APPELLANT COUNSEL WAS INEFFECTIVE FOR NOT RAISING APPELLANT FIFTH AMENDMENT RIGHT TO CONFRONTATION CLAIM

2. WHETHER APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT RAISING WHETHER THE LOWER COURT VIOLATED OHIO R. EVID. 403, 602, 702.

3. WHETHER APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT RAISING WHETHER THE TRIAL COURT GAVE IMPROPER JURY INSTRUCTIONS AND ABUSE HIS DISCRETION

4. WHETHER APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT RAISING THAT THE TRIAL COURT ABUSED ITS DISCRETION IN APPOINTING APPELLANT NEW COUNSEL WHEN THE RELATIONSHIP BETWEEN THE TRIAL ATTORNEY AND APPELLANT WAS NOT TERMINATED IN VIOLATION OF MY SIXTH AMENDMENT RIGHT.

5. WHETHER APPELLATE COUNSEL WAS IN EFFECTIVE FOR NOT RISING (sic) THAT THE INDICTMENT WAS FATALLY DEFECTIVE.

6. WHETHER THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING LAY WITNESS TO TESTIMONY (sic) UNDER EVID. R. 701, WHEN THE WITNESS WAS A KNOWN CRACK HEAD AND THE ONLY EVIDENCE IDENTIFYING A BRICK WAS LAY WITNESS AND THERE WAS NO LIBRATORY (sic) EVIDENCE TO SUPPORT THAT A BRICK WAS THE WEAPON THAT WAS USE TO ASSAULT THE VICTIM AND WHETHER APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT RAISING THIS ISSUE ON APPEAL.

7. WHETHER THE TRIAL COURT COMMITTED PREJUDICE BY NOT INSTRUCTING THE JURY THAT THEY MUST FIND THAT THE DEFENDANT KNOWLING (sic) COMMITTED THE CRIME AND WHETHER APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT PRESENTING THIS CLAIM ON APPEAL.

8. WHETHER THE GOVERNMENT VIOLATED APPELLANT SIXTH FOURTEENTH AMENDMENT RIGHTS FOR GIVING NOTICE AT TRIAL OF TWO NEW STATE WITNESSES AND FAIL TO TURN OVER THEIR CRIMINAL RECORDS AND WHETHER APPELLATE COUNSEL WAS INEFFECTIVE.

9. WHETHER THE TRIAL COURT DEMONSTRATED JUDICIAL BIAS AND WHETHER APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT PRESENTING THIS CLAIM ON APPEAL.

*Id.* Petitioner filed a motion to supplement his application with five additional assignments of error:

10. WHETHER APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT RAISING THAT THE TRIAL COURT ERRED AND OR VIOLATED O.R.C. 2945.14 BY STATING THAT APPELLANT HAD A SPECIFICATION AND WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING?

11. WHETHER APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT RAISING THAT TRIAL COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING TO FALSE TESTIMONY AND FOR NOT PRESENTING THIS CLAIM ON APPEAL?

12. WHETHER APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT RAISING WHETHER THE TRIAL COURT SHOULD HAVE GIVING (sic) A SPECIAL JURY INSTRUCTION AND WHETHER THE TRIAL COURT ABUSED ITS DISCRETION?

13. WHETHER APPELLATE COUNSEL WAS INEFFECTIVE FOR RAISING WHETHER APPELLANT FIFTH AMENDMENT RIGHT TO CONFRONTATION CLAIM?

14. WHETHER APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT RAISING WHETHER THE TRIAL COURT ERRED IN ALLOWING LAY WITNESS TESTIMONY UNDER O.R.EVID. 701 AND WHETHER APPELLANT TRIAL COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING?

(Doc. 6, Ex. 26).  The Ohio Court of Appeals denied his application to reopen on August 24, 2011.  (Doc. 6, Ex. 30).

On October 3, 2011, petitioner appealed from the denial of his 26(B) application to the Ohio Supreme Court.  (Doc. 6, Ex. 31).  Petitioner initially submitted a memorandum in support of jurisdiction raising eleven propositions of law.  (Doc. 6, Ex. 32).  On October 7, 2011, petitioner filed an amended memorandum, raising the following six propositions of law:

1. WHETHER THE COURT OF APPEALS FIRST APPELLATE DISTRICT COURT OF OHIO, HAMILTON COUNTY ERRED IN FINDING THAT APPELLATE COUNSEL WAS NOT INEFFECTIVE WAS NOT INEFFECTIVE IN FAILING TO PRESENT 14 WINNING ADDITIONAL ISSUES THAT WAS CLEAR, THUS DENYING APPELLANT APPLICATION PURSUANT TO APP.R.(26) & (B)(5) AS APPELLATE COUNSEL FAILED TO PRESENT FIFTH AMENDMENT RIGHT TO CONFRONTATION CLAIM

2. WHETHER THE FIRST APPELLATE COURT ERRED IN FINDING THE APPELLATE WAS NOT INEFFECTIVE FOR NOT PRESENTING THAT THE TRIAL COURT ERRED IN ALLOWING LAY WITNESS TESTIMONY AND FOR NOT OBJECTING TO FALSE TESTIMONY

3. WHETHER THE FIRST APPELLATE COURT ERRED IN FINDING THAT APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR NOT PRESENTING WHETHER THE TRIAL COURT GAVE IMPROPER JURY INSTRUCTIONS AND ABUSE HIS DISCRETION

4. WHETHER THE FIRST APPELLATE COURT ERRED IN FINDING THAT APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR NOT PRESENTING WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN APPOINTING APPELLANT NEW COUNSEL WHEN THE RELATIONSHIP WAS NOT PROPERLY TERMINATED

5. WHETHER THE FIRST APPELLATE COURT ERRED IN FINDING THAT APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR NOT PRESENTING THAT THE INDICTMENT WAS FATALLY DEFECTIVE

6. WHETHER THE FIRST APPELLATE COURT ERRED IN FINDING THAT APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR NOT PRESENTING WHETHER THE TRIAL COURT COMMITTED PREJUDICE BY NOT INSTRUCTING THE JURY THAT THEY MUST FIND THAT THE DEFENDANT KNOWLING (sic) COMMITTED THE CRIME

(Doc. 6, Ex. 33). On November 30, 2011, the Ohio Supreme Court dismissed the appeal as "not involving any substantial constitutional question." (Doc. 6, Ex. 35).

### Motion for a New Trial

Meanwhile, on April 1, 2011, petitioner filed a pro se motion for a new trial raising the following issue:

WHETHER THE GOVERNMENT COMMITTED A BRADY VIOLATION BY WITHHOLDING EXCULPATORY EVIDENCE IN VIOLATION OF MY CONSTITUTIONAL RIGHTS

(Doc. 6, Ex. 36). On April 5, 2011, the trial court denied his motion. (Doc. 37). Petitioner did not appeal from the trial court's decision.

### Motion for Final Appealable Order

On February 8, 2012, petitioner filed a pro se motion for the trial court to enter a final appealable order pursuant to Crim. R. 32(c) and to remand for resentencing. (Doc. 38). On February 9, 2012, the trial court denied the motion. (Doc. 6, Ex. 39). Petitioner did not appeal

8

the decision.

## Federal Habeas Corpus

On February 3, 2012, petitioner commenced the instant habeas corpus action.  (Doc. 1).

In the petition, petitioner asserts the following ten grounds for relief:

> **GROUND ONE**:  WHETHER THE COURT OF APPEALS FIRST APPELLATE DISTRICT COURT OF OHIO ERRED IN FINDING THAT APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO PRESENT FIFTH AMENDMENT RIGHT TO CONFRONT CLAIM.

> **Supporting Facts**: In this case, the appellant maintains in his first assignment of error that since Doctor Johanningman is the one that signed off on the medical report and it was presented as evidence in appellant trial (T.p. 422 line 23-25; 423 lines 1-22) appellant had a right to confront the doctor in open court. Appellant also, had a right to confront Doctor Burns, psychiatry consultation as his name appeared on a medical report and was presented as evidence too. (T.p. 425 line 4-25). Further, EMT medic Jason Edward who testified name does not appear on the EMT (ALS) report. (T.P. 275 line 12-20).

> **GROUND TWO**: WHETHER THE FIRST APPELLATE COURT ERRED IN FINDING THAT APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR NOT PRESENTING THAT THE TRIAL COURT ERRED IN ALLOWING LAY WITNESS TESTIMONY AND FOR NOT OBJECTING TO FALSE TESTIMONY.

> **Supporting Facts**: In appellant's second, assignments of error, the appellant maintains that the states witnesses Ruth Stacy and EMT medic Jason Edward was not qualified to testify as a lay witness.  More so, the expert opinion testimony by the victim treating physician that the victim had not, at the time of her assault, been under the influence of crack cocaine was inadmissible under Ohio Evid.R. 402, 403, 602, 701 and 702(c), because the physician testimony was not based on any reliable scientific information; the physician failed to perform any urine toxicology screen. (T.p. 410 line 11-16)

> **GROUND THREE**: WHETHER THE FIRST APPELLATE COURT ERRED IN FINDING THAT APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR NOT PRESENTING WHETHER THE TRIAL COURT GAVE IMPROPER JURY INSTRUCTIONS AND ABUSE HIS DISCRETION.

> **Supporting Facts**: In appellant third assignment of error, the appellant maintains that the trial court gave improper jury instructions and abuse his questions the jury submitted to the court. (T.p. 694 line 8-25; 495 lines 1- 91).

**GROUND FOUR**: WHETHER THE FIRST APPELLATE COURT ERRED IN FINDING THAT APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR NOT PRESENTING WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN APPOINTING APPELLANT NEW COUNSEL WHEN THE RELATIONSHIP WAS NOT PROPERLY TERMINATED.

**Supporting Facts**: In appellant fourth assignment of error, the appellant maintains that the appointment of new counsel to replace trial counsel in prosecuting appellant appeal was not formally or properly terminated in violation of Sixth Amendment Right and in contravention of Loc.R. 10(D) of Hamilton County Court of Common Pleas.

**GROUND FIVE**: WHETHER THE FIRST APPELLATE COURT[] ERRED IN FINDING THAT APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR NOT PRESENTING THAT THE INDICTMENT WAS FATALLY DEFECTIVE.

**Supporting Facts**: In appellant fifth assignment of error, the appellant maintains that the indictment issued on or about November 13, 2009, was flawed in that it failed to appropriately set forth the requisite mental state/culpability in each count contained therein.

**GROUND SIX**: WHETHER THE FIRST APPELLATE COURT[] ERRED IN FINDING THAT APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR NOT PRESENTING WHETHER THE TRIAL COURT COMMITTED PREJUDICE BY NOT INSTRUCTING THE JURY THAT THEY MUST FIND THAT THE DEFENDANT KNOW[INGLY] COMMITTED THE CRIME.

**Supporting Facts**: In appellant [sixth] assignment of error, the appellant maintains that the trial court failed to properly instruct the jury that they must find the appellant know[ingly] committed the crime of felonious assault.

**GROUND SEVEN**: WHETHER THE FIRST APPELLATE COURT[] ERRED IN FINDING THAT APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR NOT PRESENTING WHETHER THE GOVERNMENT VIOLATED APPELLANT['S] SIXTH AND FOURTEENTH AMENDMENT RIGHTS FOR GIVING NOTICE AT TRIAL OF TWO NEW STATE WITNESSES AND FAIL TO TURN OVER THEIR CRIMINAL RECORDS.

**Supporting Facts**: In appellant [seventh] assignment of error, the appellant maintains that the state presented two additional new state witnesses on the day of trial in violation of appellant rights to due process and Loc.R. 303, and more so, the government failed to furnish the defense with any records of prior felony conviction of the two additional witnesses under O.Crim.R. 16 discover[y] and counsel should have objected. Appellate counsel was ineffective for not presenting this claim on appeal.

**GROUND EIGHT**: WHETHER THE FIRST APPELLATE COURT[] ERRED IN FINDING THAT APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR NOT PRESENTING WHETHER THE TRIAL COURT DEMONSTRATED JUDICIAL BIAS.

**Supporting Facts**: In appellant [eighth] assignment of error, the appellant maintains that the trial judge told appellant to keep his mouth shut and was acting like the prosecutor by siding with the prosecutor on everything. (T.p. 191 line 7-9). The trial court was bias toward appellant.

**GROUND NINE**: WHETHER THE FIRST APPELLATE COURT ERRED IN FINDING THAT APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR NOT PRESENTING WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING TO FALSE TESTIMONY.

**Supporting Facts**: In appellant [ninth] assignment of error, the appellant maintains that counsel failure to object to false testimony and not present this claim on appeal render ineffective assistance of counsel.

**GROUND TEN**: WHETHER THE FIRST APPELLATE COURT[] ERRED IN FINDING THAT APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR NOT PRESENTING WHETHER THE TRIAL COURT SHOULD HAVE GIVEN A SPECIAL JURY INSTRUCTION.

**Supporting Facts**: In appellant [tenth] assignment of error, the appellant maintains that the state star witness Ruth Stacy admitted to having crack cocaine in her system and that she had relapsed (T.p. 359 line 24-25; T.p. 354-355; T.p. 408 line 16-20). More so, Stacy told Doctor Moch that she had crack in her system. (T.p. 410 line 6-16).

(Doc. 1).

Respondent opposes the petition.  In the return of writ, respondent contends that petitioner's grounds for relief are procedurally defaulted or are without merit.  (Doc. 6).

## III.    THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional claims that were raised to and decided by the Ohio courts is set forth in 28 U.S.C. § 2254(d).  Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

11

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).  The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d).  *See Johnson v. Williams*, __ S.Ct. __, No. 11-465, 2013 WL 610199, at *3 (U.S. Feb. 20, 2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents."  *Harrington*, 131 S.Ct. at 786.  In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final."  *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision").  In *Greene*, 132 U.S. at 44, the Court explained:

[W]e held last term in *Cullen v. Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

The Supreme Court precedent setting forth the clearly-established federal legal principles applicable to the case-at-hand is *Strickland v. Washington,* 466 U.S. 668 (1984). To establish a *Strickland* violation, petitioner must demonstrate both (1) his attorney made such serious errors that he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687.

In the appellate context, it is well-settled that counsel is not ineffective under the first prong of the *Strickland* test for failing to raise every non-frivolous argument. *Carter v. Wolfenbarger,* 347 F. App'x 205, 211 (6th Cir. 2009) (citing *Jones v. Barnes,* 463 U.S. 745, 751 (1983)); *see also Friday v. Pitcher,* 99 F. App'x 568, 575 (6th Cir. 2004) (quoting *Buell v. Mitchell,* 274 F.3d 337, 352 (6th Cir. 2001)) ("appellate counsel was not deficient for failing to

14

raise on direct appeal nonfrivolous claims after deciding as a matter of professional judgment not to raise those points").  Rather, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52); *see also Coleman v. Mitchell,* 268 F.3d 417, 430-31 (6th Cir. 2001).  Although it is possible to satisfy the first prong of the *Strickland* test based on a claim challenging counsel's failure to raise a particular issue on direct appeal, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins,* 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)); *see also Wilson v. Hurley,* 108 F. App'x 375, 379 (6th Cir. 2004).  "If there is a reasonable probability that [the petitioner] would have prevailed on appeal had the claim been raised," the Court then must consider "whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Carter*, 347 F. App'x at 211.  The inquiry involves an assessment of whether the underlying ineffective assistance of trial counsel claim "had a reasonable probability of success." *Valentine*, 488 F.3d at 338; *see also Carter*, 347 F. App'x at 211 ("In short, as goes [the petitioner's] trial IAC claim, so goes his appellate IAC claim.").

### A.  Ground One is without merit.

In Ground One, petitioner claims that his appellate counsel was ineffective for failing to raise a confrontation clause claim related to medical reports introduced at trial.  (Doc. 1, p. 9).  Petitioner contends that he was denied his constitutional right to be confronted with the individuals who signed the reports.  *Id.*

Petitioner raised this claim in his application to reopen his appeal.  The Ohio Court of

Appeals ruled on the merits of the claim, finding that appellate counsel was not ineffective for failing to raise the claim because the reports were not testimonial:

> Appellate counsel was not ineffective in failing to present McCrary's first and thirteenth assignments of error.  The trial court, by admitting medical and emergency-medical-technician reports without the testimony of those who had made the reports, did not deny McCrary his constitutional right to be confronted with the witnesses against him, because the reports were not testimonial.

(Doc. 6, Ex. 30, p. 2).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  In *Crawford v. Washington*, 541 U.S. 36, 51, 53-54 (2004), the Supreme Court held that this provision, which is applicable "to 'witnesses' against the accused–in other words those who 'bear testimony,'" bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination."  The Court described the class of testimonial statements covered by the Confrontation Clause as follows:

> Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309-310 (quoting *Crawford*, 541 U.S. at 51-52).  Although the *Crawford* Court refused to "definitively resolve" whether the Confrontation Clause applies outside the context of "testimonial statements," *see id.* at 61, the Court later expressly held that the Confrontation Clause applies only to testimonial hearsay.  *Davis v.*

16

*Washington,* 547 U.S. 813, 821, 823-34 (2006).

In the instant case, the Ohio Court of Appeals determined that petitioner's underlying Confrontation Clause claims were without merit because the medical reports were not testimonial.  In reaching this decision the appellate court cited to the Supreme Court's decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. at 312 fn.2, where the Court indicated that medical reports created for treatment purposes are not testimonial.  The Appeals court also cited to *State v. Tolbert*, No. 24958, 2010 WL 2512584, at*2-3 (Ohio App. 9 Dist. June 23, 2010), an Ohio Court of Appeals decision quoting *Melendez-Diaz* for the proposition that "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because-having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial-they are not testimonial." *Id.* (quoting *Melendez-Diaz*, 557 U.S. at 324).

After review of the record in this case, the Court finds that the Ohio Court of Appeals' decision was not based on an unreasonable determination of the facts or an unreasonable application of Supreme Court precedent.  At trial, the prosecution offered the testimony of the emergency resident physician and emergency medical technician treating the victim on the night of the incident.  During the course of their testimony, reports prepared by the hospital and emergency response team were submitted as evidence.  As the Ohio appellate court reasonably determined, the reports were prepared during the course of the victim's treatment and in the ordinary course of business.  (*See* Doc. 6, Transcript pp. 274, 422-23).  Neither report included testimonial statements that would lead an objective witness to reasonably believe that the contents of the report would be available for use at a later trial.  As such, admission of the non-testimonial reports did not violation petitioner's constitutional rights.  *See e.g. Tatum v.*

17

*McQuiggin*, 5:10-cv-11383, 2011 WL 576751, at *5-6 (E.D. Mich. Feb. 9, 2011) (finding that business records and medical reports created for treatment purposes are not considered testimonial and, therefore, do not implicate the Confrontation Clause).  Because petitioner's Confrontation Clause claim is without merit, the Ohio Court of Appeals reasonably concluded that appellate counsel was not ineffective for failing to raise the meritless claim.  *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("if the underlying substantive claims have no merit, the applicant cannot demonstrate that counsel was ineffective for failing to raise those claims on appeal."); *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) ("appellate counsel cannot be ineffective for failure to raise an issue that lacks merit.") (citation omitted).

Accordingly, petitioner is not entitled to habeas relief based on Ground One of the petition.

### B. Ground Two is without merit.

In Ground Two, petitioner argues that appellate counsel was ineffective for failing to argue that the trial court erred in admitting lay testimony at trial.  (Doc. 1, Memorandum p. 10). Petitioner contends that "witnesses Ruth Stacy and EMT medic Jason Edward w[ere] not qualified to testify as lay witnesses."  *Id.*  He further argues that the physician treating the victim improperly testified that the victim was not under the influence of crack cocaine at the time of her treatment.  According to petitioner, the physician's testimony was not based on any reliable scientific information because the physician failed to perform a urine toxicology screen.  *Id.*

In denying petitioner's application to reopen his direct appeal, the Ohio Court of Appeals found that appellate counsel was not ineffective for raising the assignment of error:

> In his . . . sixth, and fourteenth proposed assignments of error, McCrary challenges his appellate counsel's effectiveness in failing to assign as error the trial court's admission of testimony by various witnesses and his trial counsel's failure to object to the testimony.  We cannot say that the trial court abused its

18

discretion in admitting the testimony, or that trial counsel was ineffective in regard to its admission.

. . .

Expert opinion testimony by the victim's treating physician that the victim had not, at the time of her assault been under the influence of crack cocaine was admissible under Evid. R. 402, 403 and 702-705. The physician was qualified as a medical expert by experience and training. Her opinion was based on facts perceived by her and disclosed at trial and was relevant to the issue of, and was helpful to the jury in determining the accuracy of, the victim's identification of McCrary as her assailant. And the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice or confusion of the issues.

The victim's testimony that she had been assaulted with a brick was admissible under Evid. R. 601 and 602, even if she was, as McCrary insists, a "known crack head," and even if the testimony was not, as McCrary insists it should have been, corroborated by "l[a]bratory evidence." The victim was not demonstrably incompetent to be a witness. She testified to a matter concerning which she had personal knowledge. And her credibility was a matter for the jury to decide.

Testimony by the emergency medical technician concerning his treatment of the victim at the scene was admissible under Evid.R. 601 and 702. His testimony concerning the victim's risk of death was admissible as lay opinion testimony, because the testimony was rationally based on his perceptions and was helpful to the jury in determining whether the victim had suffered serious physical harm. And the balance of his testimony was based on what he had observed.

(Doc. 6, Ex. 30, pp. 2-3).

The Ohio Court of Appeals' decision was neither an unreasonable application of federal law nor based on an unreasonable determination of the facts. As noted above, the Ohio appellate court determined that appellate counsel was not ineffective because petitioner's underlying evidentiary claims were without merit. This federal court is bound by the state court's interpretation of state law. *See Brooks v. Anderson*, 292 F. App'x 431, 437-38 (6th Cir. 2008) ("this Court has held that federal habeas courts must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition. It stands to reason that this is true even when the petitioner is not seeking habeas relief on the state court evidentiary

determination at issue." ) (citations and internal quotation marks omitted).  *See also Adams v. Smith*, 280 F. Supp.2d 704, 721 (E.D. Mich. 2003) (deferring to the state court's evidentiary determination that contested testimony was not hearsay in rejecting a claim of ineffective assistance of counsel for failure to object to the alleged hearsay).  Accordingly, because petitioner's evidentiary claims are without merit, the Ohio Court of Appeals reasonably determined that appellate counsel was not ineffective for failing to raise the claims on appeal. *Davie*, 547 F.3d at 312; *Willis*, 351 F.3d at 745.  Petitioner is therefore not entitled to habeas relief based on Ground Two of the petition.

**C.  Ground Three is without merit.**

In Ground Three, petitioner claims that his appellate counsel was ineffective for failing to argue that the trial court gave improper jury instructions, based on the trial court's "interrupt[ing] the jury deliberation to answer some questions the jury submitted to the court."  (Doc. 1, p. 11). According to petitioner, the trial judge was required to inform the jurors of the possibility that testimony can be read back to them and that the court abused its discretion by failing to do so. (Doc. 8, p. 5).

During jury deliberations, the jury members submitted several questions to the trial court. The trial judge addressed the jury as follows:

> THE COURT: Very well.  Good morning ladies and gentlemen of the jury.  It is still is morning.
>
> We have interrupted your deliberations for two reasons.  Number 1, we are going to send you to lunch.
>
> Number 2, you submitted questions which we will now address.
>
> The first question is, "Is the suicide letter in evidence?  If so, where is it?"
>
> The suicide letter was not admitted into evidence.

"Was there an address on the felonious warrant?"

"Can we have any information on the first assault, October 31st?"

"Do we have phone records for the defendant after 10/25?"

The next question which was submitted separately, "Did the defense try to subpoena Michael Collins' first wife and sister to testify that the defendant called them to tell them of the drug problems of the victim?"

Ladies and gentlemen of the jury, you're going to have to rely on your collective memories based upon what you heard from the evidence. These questions cannot be answered because simply you will have to rely on your collective memories.

As we told you when we instructed you, you will consider the evidence that you heard from the mouths of the witnesses from the witness stand, plus the exhibits which have been admitted during the course of the trial, plus any agreed or stipulated facts. That is the best answer I could give you.

(Doc. 6, Transcript pp. 694-95).

The Ohio Court of Appeals was the last court to issue a reasoned decision on petitioner's jury instruction claim. In denying his application to reopen his appeal, the appellate court found that the trial court did not abuse its discretion in issuing the instruction:

The trial court did not abuse its discretion when, in response to questions concerning the evidence, submitted by the jury during its deliberations, the court instructed the jurors to "rely on [their] collective memories."

(Doc. 6, Ex. 30, p. 5). The appellate court cited to *State v. Bethel*, 854 N.E.2d 150 (Ohio 2006) in the decision. In that case, the jury requested to hear a tape played during trial but not formally admitted into evidence during their deliberations. *Id.* at 172. The Ohio Supreme Court held that it is within the trial court's discretion whether to grant or deny a request to see an exhibit and that the trial court did not err in instructing the jury that "You have everything you need. * * * [Y]ou have everything that's been admitted into evidence, and the rest you will have to rely on your collective memory for." *Id.* Therefore, because the trial court did not abuse its discretion or otherwise err under Ohio law, petitioner's underlying jury instruction claim is without merit.

21

Accordingly, petitioner's appellate counsel was not ineffective for failing to raise the meritless claim on appeal and petitioner is not entitled to habeas relief based on Ground Three of the petition.

### D. Ground Four is without merit.

In Ground Four, petitioner claims that his appellate counsel was ineffective for failing to raise as an assignment of error trial counsel's failure to properly request to withdraw from petitioner's case. (*See* Doc. 1, pp. 11-12; Doc. 8, p. 6). According to petitioner, although counsel verbally requested for the court to appoint petitioner new counsel on appeal, trial counsel "failed to request in writing that he want[ed] to withdraw in accordance with Loc. R. 10(D)." (Doc. 8, p. 6). On this basis, petitioner claims that his right to counsel was violated and that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on appeal.

In denying to reopen petitioner's appeal, the Ohio Court of Appeals addressed petitioner's claim and found the claim would have offered no prospect of success because it is not supported by the record. (Doc. 6, Ex. 30, p. 3). Specifically, the Ohio Court of Appeals found that "[t]he appointment of new counsel to replace trial counsel in prosecution of McCrary's appeal was not accomplished, as McCrary insists, in contravention of Loc.R. 10(D) of the Hamilton County Court of Common Pleas." *Id.*

Petitioner has failed to demonstrate that the Ohio Court of Appeals decision is contrary to or an unreasonable application of Supreme Court precedent. As respondent has argued in the return of writ, Local Rule 10(D) of the Hamilton County Court of Common Pleas is inapplicable to petitioner's criminal trial.[1] Petitioner is therefore unable to show that trial counsel was ineffective for failing to raise the meritless claim. Furthermore, petitioner cannot demonstrate that he was prejudiced by trial counsel's alleged ineffectiveness because he was ultimately

22

appointed counsel on appeal.  (*See* Doc. 6, Ex. 11).  Because petitioner's underlying ineffective assistance of counsel claim is itself without merit, the Ohio Court of Appeals reasonably determined that appellate counsel was not ineffective for failing to raise the claims on appeal. *Davie*, 547 F.3d at 312; *Willis*, 351 F.3d at 745.  Accordingly, petitioner is not entitled to habeas relief based on Ground Four of the petition.

### E.  Grounds Five and Six are without merit.

In Ground Five, petitioner contends that his appellate counsel was ineffective for failing to argue that his indictment was fatally defective on appeal.  (Doc. 1, p. 12).  Petitioner maintains that the indictment "was flawed in that it failed to appropriately set forth the requisite mental state/culpability in each count contained therein." *Id.*  In Ground Six, petitioner argues that the trial court failed to properly instruct the jury that they must find that petitioner knowingly committed the crime of felonious assault.  On this basis, he claims his appellate counsel was ineffective for failing to raise the claim on appeal. *Id.*

In addressing petitioner's claims, the Ohio Court of Appeals found that appellate counsel was not ineffective because the underlying indictment claims would have offered no prospect of success because they are not supported by the record.  (Doc. 6, Ex. 30, p. 3).  The Ohio Court of Appeals reasoned that "[b]oth counts of McCrary's indictment charged a culpable mental state, and the trial court did not, as McCrary alleges, neglect to instruct the jury on that culpable mental state.  (Doc. 6, Ex. 30, p. 3).

As the Ohio Court of Appeals reasonably determined, appellate counsel was not ineffective for failing to raise petitioner's claims on appeal.  Contrary to petitioner's position, the indictment in this case did specify that petitioner was charged with "knowingly" causing or attempting to cause physical harm to the victim.  (*See* Doc. 6, Ex. 3).  Furthermore, the jury

---

[1]  Local Rule 10(D) governs the application for leave to withdraw as trial counsel in civil cases.

instructions regarding the count of felonious assault specifically informed the jury that they must

find that petitioner "knowingly caused or attempted to cause physical harm to Ruth Stacy by

means of a deadly weapon or dangerous ordnance" and that "[a] person acts knowingly,

regardless of his purpose, when he or she is aware that his conduct will probably cause a certain

result or will probably be of a certain nature." (Doc. 6, Transcript pp. 677-78; *see also* pp. 679-

680). Therefore, because the claims raised in Grounds Five and Six of the petition are belied by

the record, appellate counsel was not ineffective for failing to raise the meritless claims. *Davie*,

547 F.3d at 312; *Willis*, 351 F.3d at 745. Accordingly, petitioner is not entitled to relief based on

Grounds Five and Six of the petition.

### F. Petitioner procedurally defaulted and waived Grounds Seven through Ten.

In Ground Seven, petitioner contends that "the state presented two additional new state

witnesses on the day of the trial in violation of [petitioner's] rights to due process and Loc. R.

303, and more so, the government failed to furnish the defense with any records of prior felony

conviction of the two additional witnesses under O.Crim.R. 16 discover[y] and counsel should

have objected." (Doc. 1, Memorandum p. 13). Petitioner contends that appellate counsel was

ineffective for failing to raise this error on appeal. *Id.* In Ground Eight, petitioner claims that his

appellate counsel was ineffective for counsel's failure to claim judicial bias on appeal. *Id.* In

Ground Nine, he contends appellate counsel was ineffective in failing to object to false

testimony. *Id.* at 14. Finally, in Ground Ten, petitioner argues that his appellate counsel was

ineffective based on counsel's failure to claim that the trial court should have given the jury a

special jury instruction. *Id.*

In recognition of the equal obligation of the state courts to protect the constitutional rights

of criminal defendants, and in order to prevent needless friction between the state and federal

24

courts, a state defendant with federal constitutional claims must fairly present those claims to the

state courts for consideration before raising them in a federal habeas corpus action. *See* 28

U.S.C. § 2254(b)(1), (c); *see also Anderson,* 459 U.S. at 6; *Picard v. Connor,* 404 U.S. 270, 275-

76 (1971). A constitutional claim for relief must be presented to the state's highest court in order

to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848

(1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94,

97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims

through the requisite levels of state appellate review to the state's highest court or commits some

other procedural default that prevents a merit-based review of the federal claims by the state's

highest court, he may have waived the claims for purposes of federal habeas review. *See*

*O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,*

763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir.

1989).

It is well-settled under the procedural default doctrine that the default of a federal claim

in the state court may preclude federal habeas review if the state court judgment rests on a state-

law ground that is both "independent" of the merits of the federal claim and an "adequate" basis

for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default, and actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claims will result in a fundamental
> miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner

fails to comply with a state procedural rule that required him to have done something at trial to

25

preserve the issue for appellate review.  *United States v. Frady*, 456 U.S. 152, 167-69 (1982);

*Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

> The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:
>
> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138

(6th Cir. 1986)).

In the usual case, the adequate and independent state ground doctrine will not apply to

bar consideration of a federal claim on habeas corpus review unless the last state court rendering

a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural

bar.  *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).[2]  In

cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar,

the court will presume that a later unexplained order did not silently disregard the procedural

default and consider the merits of the claim.  *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the

state courts on state procedural grounds applies only in cases where the state rule relied on by the

---

[2] In *Harris,* the Supreme Court noted that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief.  *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").  The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."  *Harris*, 489 U.S. at 263 n.9.

courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied.  *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009).  To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases."  *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

Finally, the state court's adequate and independent finding of procedural default will preclude habeas corpus review of the petitioner's federal claims unless the petitioner can show "cause" for the default and "actual prejudice" as a result of the alleged violations of federal law, or that failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as respondent has argued, petitioner did not satisfy the fair presentation requirement with regard to the claims asserted in Grounds Seven, Eight, Nine and Ten because he never presented those claims to the Ohio Supreme Court.  Although petitioner raised these claims in his application to reopen his appeal, petitioner failed to include these claims in his appeal to the Ohio Supreme Court.[3]  Because petitioner failed to present the state's highest court

---

[3] Petitioner's initial memorandum of jurisdiction to the Ohio Supreme Court included the claims raised in Grounds Seven through Ten.  (*See* Doc. 6, Ex. 32).  However, petitioner subsequently filed an amended memorandum that did not include these claims.  (*See* Doc. 6, Ex. 33).  Therefore, by abandoning the claims raised in Grounds Seven through Ten, petitioner failed to provide the Ohio Supreme Court with the opportunity to address his claims on the merits.  Petitioner does not contest that these claims were not fairly presented to the Ohio Supreme Court.  Instead, as discussed below, petitioner contends that the default was due to the ineffective assistance of appellate counsel. (*See* Doc. 8, pp. 6-7).

with an opportunity to correct the errors alleged in Grounds Seven, Eight, Nine and Ten, he has waived the claims unless he demonstrates cause for and prejudice from his procedural default in the state courts or that failure to consider the claims will result in a "fundamental miscarriage of justice." *See, e.g.*, *Coleman,* 501 U.S. at 750; *Murray,* 477 U.S. at 495.

In this case, petitioner has not demonstrated "cause" for his procedural default.  Despite the fact that he proceeded pro se on appeal from the denial of his application to reopen, petitioner claims that the Court should excuse the default of his claims because of the ineffective assistance of his appellate counsel.  (*See* Doc. 8, pp. 6-7).  Ineffective assistance of counsel may constitute cause for a procedural default, s*ee, e.g., Murray,* 477 U.S. at 488, however, attorney error cannot constitute cause where there is no constitutional entitlement to counsel or the ineffective assistance of counsel claim is itself procedurally defaulted.  Petitioner cannot rely on the ineffective assistance of appellate counsel as cause for his defaults because petitioner had no constitutional right to counsel during the post-conviction proceeding.  *See Lopez v. Wilson,* 426 F.3d 339, 354 (6th Cir. Ohio 2005) (a 26(B) application to reopen appeal is a post-conviction proceeding); *Coleman,* 501 U.S. at 752 (there is no constitutional right to counsel during a post-conviction proceeding).  Furthermore, while the ineffective assistance of appellate counsel could constitute cause for his failure to raise the underlying claims on appeal, petitioner does not appear to raise the underlying claims as grounds for relief in the instant petition and, in any event, he procedurally defaulted his ineffective assistance of appellate counsel claims by failing to fairly present the claims to the Ohio Supreme Court.

Finally, petitioner has failed to demonstrate that failure to consider his claims for relief will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors

"probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96. *See also Schlup v. Delo,* 513 U.S. 298, 327 (1995).

Accordingly, the Court finds Grounds Seven, Eight, Nine and Ten procedurally defaulted and waived. Therefore, petitioner is not entitled to relief based on Grounds Seven through Ten of the petition.

Accordingly, in sum, the undersigned concludes that the Ohio Court of Appeals' adjudication of petitioner's constitutional claims raised in Grounds One through Six was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court. Petitioner has not shown that "fairminded jurists could disagree" that the Ohio Court of Appeals' adjudication of the constitutional issues conflicts with the relevant Supreme Court precedents, or "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Harrington*, 131 S.Ct. at 786-87. With regard to Grounds Seven through Ten of the petition, the undersigned finds that petitioner procedurally defaulted and waived his grounds for relief by failing to present the claims to the Ohio Supreme Court. Therefore, petitioner is not entitled to relief based on the claims alleged in the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000)

(citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)).  *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

      A certificate of appealability should not issue with respect to the claims for relief alleged in the petition, which this Court has concluded are barred from review on a procedural ground, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling.

      3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

                           *s/ Stephanie K. Bowman*
                           Stephanie K. Bowman
                           United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

NORMAN MCCRARY,                                Case No. 1:12-cv-101
      Petitioner,

                        Barrett, J.

      vs.                                      Bowman, M.J.

WARDEN, LONDON
CORRECTIONAL INSTITUTION,
      Respondent.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).